**FILED**

**April 10, 2026**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **CM** _____

DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARTHA ELAINE BERKES, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 5:25-CV-01547-MA |
| | § | |
| ZAKARYA ALI MAHYOUB | § | |
| COMPLAINT FOR ALWAHSH, | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

The Court now considers the Motion to Dismiss[1] filed by United States Secretary of State Marco Rubio, the United States Department of State, and the Embassy of the United States, Djibouti (together, "Defendants"), Plaintiffs' Response,[2] and Defendants' Reply.[3] After considering the motion, record, and relevant authorities, the Court **GRANTS** Defendants' motion.

### I.    FACTUAL BACKGROUND

Plaintiffs Martha Elaine Berkes ("Berkes") and Zakarya Ali Mahyoub Alwahsh ("Alwahsh") allege that Defendants have unreasonably delayed final adjudication of Alwahsh's immigrant visa application after the interviewing consular officer questioned the legitimacy of their marriage based on unlawful gender, age, and religious bias and returned Alwahsh's I-130 petition to United States Citizenship and Immigration Services ("USCIS").

Assuming the facts in Plaintiffs' amended complaint to be true, Plaintiff Berkes is a United States citizen residing in San Antonio, Texas.[4] On July 19, 2022, she married Plaintiff Alwahsh, a citizen and national of Yemen, in a civil ceremony in Cairo, Egypt.[5]

---

[1] Dkt. No. 10.
[2] Dkt. No. 13.
[3] Dkt. No. 15.
[4] Dkt. No. 1, at 3, Exs. A–B.
[5] Dkt. No. 1, at 4, Exs. H–L.

On August 11, 2022, Berkes filed an I-130 Petition for Alien Relative ("I-130 Petition") on Plaintiff Alwahsh's behalf.[6] This Petition was approved on July 12, 2023, and a case number was assigned to it on August 8, 2023.[7]

Plaintiff Alwahsh submitted all required documents and his Form DS-260 on August 20, 2023.[8] His interview with Defendant Embassy of the United States, Djibouti ("Embassy of Djibouti") was scheduled and conducted on January 21, 2025.[9]

Plaintiff Alwahsh asserts that numerous concerning things occurred during this interview. First, "[t]he room did not have a functioning microphone, which made it extremely difficult [for Plaintiff Alwahsh] to hear the consular officer," requiring Plaintiff Alwahsh to "ask for clarification multiple times to understand her questions clearly."[10] The officer then "ignored [Plaintiff] Alwahsh's attempt to provide a prepared correction to his DS-260 regarding prior visas before conducting the interview."[11] Although Plaintiff Alwahsh spoke in English when he addressed the consular officer and requested that the interview take place in English, the consular officer refused to address him directly, and instead "repeatedly asked her assistant[ ]to speak to [Plaintiff Alwahsh] in Arabic."[12] The consular officer appeared "visibly uncomfortable" during Plaintiff Alwahsh's interview, remarking that it was "'unusual' for a Muslim man to marry a Christian woman,"[13] and made "multiple comments to the interpreter that were likely not intended to be understood by [Plaintiff Alwahsh]," such as noting that Berkes is older than Plaintiff Alwahsh, and "questioning the legitimacy of the relationship on that basis."[14]

Plaintiffs assert that "[f]ollowing the interview, the consular officer did not issue or refuse the visa. Instead, Plaintiff Alwahsh was given a worksheet for administrative processing under [§] 221(g)." [15] Plaintiffs later learned Plaintiff Alwahsh's I-130 petition had been "returned to the National Visa Center without explanation, and no opportunity was given to submit clarification or additional documents."[16] When Plaintiff Berkes contacted USCIS on February 28, 2025, she was

---

[6] Dkt. No. 1, at 4, Exs. M–O.
[7] Dkt. No. 1, at 4, Exs. P–Q.
[8] Dkt. No. 1, at 5, Ex. R.
[9] Dkt. No. 1, at 5, Exs. S–T.
[10] Dkt. No. 1-2, at 102.
[11] Dkt. No. 1-2.
[12] Dkt. No. 1-2, at 102.
[13] Dkt. No. 1-2, at 102.
[14] Dkt. No. 1-2.
[15] Dkt. No. 1, at 6; 1-2, at 102.
[16] Dkt. No. 1-2, at 102.

informed by a USCIS agent that his application had been returned to USCIS "for a second review," but had already been approved and again returned to NVC for processing.[17] As of the date of Plaintiffs' complaint, no further action has been taken on Plaintiff Alwahsh's application.[18]

## II.   PROCEDURAL BACKGROUND

Plaintiffs commenced this action on November 21, 2025, alleging that Defendants arbitrarily, unlawfully, and discriminatorily handled Plaintiff Alwahsh's visa application in violation of: (1) the procedural requirements of the Administrative Procedure Act ("APA") and the Immigration and Nationality Act ("INA"); (2) Plaintiff Berkes's religious exercise under the Religious Freedom Restoration Act of 1993 ("RFRA"); and (3) Plaintiff Berkes's and Plaintiff Alwahsh's equal protection under the Fifth Amendment's Due Process Clause.[19] Plaintiffs request that the Court declare that Defendants violated Plaintiff Berkes' First Amendment right to religious exercise as enshrined in the RFRA, unlawfully discriminated against both Plaintiff Berkes and Plaintiff Alwahsh in violation of their Fifth Amendment rights, and "[m]andate that Defendants recall the visa petition and fully and properly adjudicate the immigrant visa application of Plaintiff Alwahsh within 30 days."[20]

Defendants filed their Motion to Dismiss on March 4, 2026.[21] Plaintiffs timely responded on March 19, 2026,[22] and Defendants filed a reply on March 26, 2026.[23] The motion is ripe for consideration.

## III.   JURISDICTION

### a.   12(b)(1) Dismissal

Dismissal for lack of subject matter jurisdiction is proper when a court lacks statutory or constitutional authority to adjudicate the claim.[24] When considering a Rule 12(b)(1) motion, a court must "accept the complainant's well-pleaded factual allegations as true."[25] "[T]he general

---

[17] Dkt. No. 1-2, at 124.
[18] Dkt. No. 1, at 6.
[19] Dkt. No. 1.
[20] Dkt. No. 1, at 24. In Plaintiffs' prayer, Plaintiffs request that the Court "declare as a matter of law that Defendants have violated the *Fourteenth* Amendment rights of Plaintiff Berkes." Dkt. No. 1, at 24. Because Plaintiffs cause of action is against the Federal Government, not any State, the Court interprets this as a typographical error and construes it as a request for a finding under the Fifth Amendment.
[21] Dkt. No. 10.
[22] Dkt. No. 13.
[23] Dkt. No. 15.
[24] *Home Builders Assoc. of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).
[25] *Carver v. Atwood*, 18 F.4th 494, 496 (5th Cir. 2021).

burden is on the party asserting jurisdiction.[26] In considering the motion, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[27]

Defendants moved to dismiss under Rule 12(b)(1), or alternatively Rule 12(b)(6), primarily arguing that Plaintiffs' claims are barred by the doctrine of consular nonreviewability, which precludes judicial review of visa denials as discretionary decisions because "the decision to deny a visa is committed to a consular officer's discretion."[28] Defendants cite Fifth Circuit precedent to argue that this doctrine deprives the Court of subject-matter jurisdiction and warrants dismissal under Rule 12(b)(1).[29] However, in *Department of State v. Muñoz*, the Supreme Court clarified that, while the doctrine of consular nonreviewability may limit the availability or scope of relief in suits challenging visa decisions, it "is not jurisdictional."[30] Accordingly, the Court has jurisdiction to hear the merits of Plaintiffs' claims under 28 U.S.C. § 1331, and proceeds with analysis of Defendants' consular nonreviewability arguments under Rule 12(b)(6).

### IV.    LEGAL FRAMEWORK

### a.    12(b)(6) Motion for Dismissal

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[31] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[32] Courts first disregard from their analysis any conclusory allegations as not entitled to the assumption of truth,[33] but regard well-pled facts as true, viewing them in the light most

---

[26] *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021).

[27] *Jolghazi v. Blinken*, No. 5:23-CV-01071-OLG, 2024 WL 4182593, at *1–2 (W.D. Tex. July 30, 2024) (citing *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (internal citations omitted)).

[28] Dkt. No. 10, at 4, 6–13 (citing *Jaime v. Blinken*, No. EP-22-CV-248-KC, 2023 WL 2657651, at *2 (W.D. Tex. Mar. 24, 2023); *Centeno v. Schultz*, 817 F.2d 1212 (5th Cir. 1987) (per curiam) (affirming dismissal of visa denial claim "in accord with our prior holdings that decisions of United States consuls on visa matters are nonreviewable by the courts")).

[29] Dkt. No. 10, at 4 (citing *Mulligan v. Schultz*, 848 F.2d 655, 657 (5th Cir. 1988) (describing consular nonreviewability as a bar to judicial review); *Jaime v. Blinken*, No. EP-22-CV-248-KC, 2023 WL 2657651, at *1 n.1 (W.D. Tex. Mar. 24, 2023)).

[30] *Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024) (citing *Trump v. Hawaii*, 585 U.S. 667, 682–83 (2018)).

[31] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *cert. denied*, 552 U.S. 1182 (2008) (internal quotations omitted)).

[32] *Twombly*, 550 U.S. at 555.

[33] *See id.* at 678–79.

favorable to the plaintiff.[34] Courts then undertake the "context-specific" task of determining whether the remaining well-pled allegations give rise to an entitlement to relief that is plausible, rather than merely possible or conceivable.[35]

Courts are to give a liberal construction to the pleadings and preclude plaintiffs from offering evidence to clarify and support their theories of liability only if there is no basis for liability.[36] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[37] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged."[38] The complaint must plead every material point necessary to sustain recovery; dismissal is proper if the complaint lacks a requisite allegation.[39]

The factual information a court may consider when evaluating whether a plaintiff's complaint survives a 12(b) motion to dismiss is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201.[40]

### b. INA Framework

Under the INA, consular officers are authorized to issue immigrant visas.[41] One of the principal ways foreign nationals immigrate to the United States is through a Form I-130 family-sponsored visa.[42]

The process begins when a citizen or lawful permanent resident files Form I-130, Petition for Alien Relative, to classify the noncitizen as an immediate relative and to secure a visa priority.[43]

---

[34] *Id.*

[35] *See id*. at 679–80.

[36] *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (citation omitted) ("[T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint.").

[37] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[39] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

[40] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[41] *See* 8 U.S.C. § 1201.

[42] *See* 8 U.S.C. §§ 1151, 1153(a)(1)–(4).

[43] *See United States v. Asibor*, 109 F.3d 1023, 1035 n.13 (5th Cir. 1997) (internal citations omitted).

USCIS then adjudicates the petition and determines whether a qualifying relationship exists.[44] If USCIS approves the petition, it transmits the approval to the Department of State's National Visa Center ("NVC"), which records the petition and notifies the petitioner and any qualifying family members when they may file their immigrant visa applications.[45]

Upon notice from the NVC, the noncitizen beneficiary must file the appropriate immigrant visa application, such as a DS-260 application, with the appropriate U.S. consulate abroad.[46] The applicant bears the burden of establishing eligibility to receive a visa.[47] Following submission of the application, the consulate schedules an in-person interview,[48] where the consular officer determines: (1) the basis for the applicant's representations; (2) the basis for the visa application; (3) the appropriate immigrant classification; and (4) the applicant's eligibility to receive a visa.[49] The officer may require the applicant to respond to "any question deemed material to these determinations."[50] At the conclusion of this process, the officer must either issue the visa or refuse it pursuant to INA §§ 212(a), 221(g), or another applicable provision.[51]

INA § 221(g), codified at 8 U.S.C. § 1201(g), provides that a consular officer must refuse a visa if the officer determines from the application and supporting information that: (1) the documents or statements therein show that the applicant is inadmissible under INA § 1182; (2) the application does not comply with the INA or its regulations; or (3) the officer knows or has reason to believe that the applicant is inadmissible under § 1182 or other applicable law.[52] The officer must inform the applicant of the statutory or regulatory provision underlying the refusal and of any statute or regulation under which administrative relief may be sought.[53]

If the underlying visa application suffers only a minor defect, the consular post may retain the DS-260 and underlying petition and accept supplemental materials directly.[54] If, however, a

---

[44] *See Naseri v. Rubio*, No. 24-CV-2125 (GMH), 2025 WL 1865035, at *2 (D.D.C. July 7, 2025) (internal citations omitted).
[45] *Id.*
[46] *See Asibor*, 109 F.3d at 1035 n.13; *see also* 22 C.F.R. § 42.63(a)(1) (providing that every immigrant visa applicant must apply as directed by the consular officer and that this requirement may not be waived).
[47] See 8 U.S.C. § 1361.
[48] *See Asibor*, 109 F.3d at 1035 n.13; *see also* 22 C.F.R. § 42.62(a) ("Every alien applying for an immigrant visa ... shall be required to appear personally before a consular officer for the execution of the application...").
[49] *See* 22 C.F.R. § 42.62(b).
[50] *See id.*
[51] *See* 22 C.F.R. § 42.81(a).
[52] *See* 8 U.S.C. § 1201(g).
[53] *See* 22 C.F.R. § 42.81(b).
[54] 9 Foreign Affs. Manual § 504.10-11.

consular officer develops a reasonable suspicion that an approved petition may have been obtained through fraud or misrepresentation, the officer may refuse the visa application under INA § 221(g) and return the underlying petition to USCIS through NVC for additional "administrative processing," with a recommendation of reconsideration or revocation.[55] USCIS then conducts whatever additional investigation it deems appropriate, which may result in reaffirmation or revocation of the I-130 petition.[56] If USCIS reapproves the petition, it transmits the approval back to the Department of State's NVC to be processed for re-consideration with the appropriate consular post.[57]

### V.    ANALYSIS

### a.  The APA and Consular Nonreviewability

Under the APA, a person "adversely affected or aggrieved" by federal agency action or inaction is entitled to seek judicial review.[58] A claim under § 706(1) must allege that the agency failed to take a discrete action that it is legally required to take.[59] Upon a finding that the agency violated its statutory or regulatory mandate, the APA authorizes a court to "compel [the] agency action unlawfully withheld or unreasonably delayed."[60]

Courts apply a strong presumption in favor of judicial review of administrative action, which may ordinarily be overcome only when a statute expressly bars review under § 701(a)(1) or if the matter is "committed to agency discretion by law" under § 701(a)(2).[61] However, courts have long recognized the doctrine of consular nonreviewability, which treats the Executive's decisions "to admit or to exclude an alien" as "final and conclusive."[62] The Supreme Court has made clear that the INA does not permit federal courts to review consular visa denials except where a visa denial is alleged to burden a U.S. citizen's constitutional rights.[63] Even in that setting, if the Government offers a "facially legitimate and bona fide reason" for the denial, courts lack authority

---

[55] *See* 8 U.S.C. §§ 1201(g), 1155; 22 C.F.R. § 40.6, 42.43; *see also* 9 Foreign Affs. Manual §§ 301.1-2, 504.2(B)(2) (2025); *see also Naseri*, No. 24-CV-2125 (GMH), 2025 WL 1865035, at *2 (citing *Datta v. Rubio*, No. 24-cv-937, 2025 WL 752643, at *1 (D.D.C. March 10, 2025)).

[56] *See* 8 C.F.R. § 205.2(a), (c).

[57] *See* 8 U.S.C. §§ 1155, 1201(g); 9 Foreign Affs. Manual § 504.2-8(C)(1) (2025).

[58] 5 U.S.C. § 702.

[59] *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

[60] 5 U.S.C. § 706(1); *Jaraba v. Blinken*, 568 F. Supp. 3d 720, 728 (W.D. Tex. 2021).

[61] W*eyerhaeuser Co. v. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018); 5 U.S.C. § 701(a); *Mazher v. Rubio*, No. 4:25 CV 017 P, 2025 WL 2471789, at *3 (N.D. Tex. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2468205 (N.D. Tex. Aug. 27, 2025).

[62] *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 547 (1950); *Muñoz*, 602 U.S. at 908.

[63] *Muñoz*, 602 U.S. at 908; *Trump*, 585 U.S. at 703.

to "look behind" that exercise of discretion or to weigh the stated reason against the asserted constitutional interest, and judicial inquiry ends.[64]

Plaintiffs argue that the APA applies to the consular and immigration decisions at issue because a visa denial and the handling of an approved I-130 petition qualify as "agency action" that courts may review, compel, or set aside when arbitrary, capricious, unlawful, or contrary to constitutional rights.[65] Plaintiffs' APA claim may essentially be broken into three components: that the consular officer (1) failed to render a decision on Alwahsh's visa application or provide adequate notice that his application was being returned to USCIS on the day of his interview (2) as the result of discriminatory animus, which (3) has unreasonably delayed the processing of his visa application.[66] The Court considers each of these in turn.

   i.   *Impermissible Inaction and Unreasonable Delay*

The Court first considers Plaintiffs' allegation that Defendants impermissibly failed to issue a final decision on Plaintiff Alwahsh's visa application in violation of controlling agency regulations.[67] Plaintiffs allege throughout their complaint that the consular officer who interviewed Plaintiff Alwahsh violated her "clear, nondiscretionary duty" to issue a final decision, instead only providing him with a "worksheet for administrative processing under [§] 221(g)."[68] In so arguing, Plaintiffs appear not to recognize that this "worksheet" that Plaintiff Alwahsh received was, in fact, the consular officer's formal notice of refusal.

As the Court has discussed, *supra*, when a consular officer determines that a visa application is not eligible for approval because something appears defective or incomplete, the officer may issue a visa refusal under INA § 221(g)/8 U.S.C. § 1201(g) and return the underlying I-130 petition to USCIS.[69] Plaintiffs appear to interpret the fact that Plaintiff Alwahsh's I-130 petition was returned to USCIS as evidence that the consular officer did not adjudicate his DS-260

---

[64] *Muñoz*, 602 U.S. at 908; *see also Kerry v. Din*, 576 U.S. 86, 103–04 (2015) (Kennedy, J., concurring in the judgment) (quoting *Kleindienst v. Mandel,* 408 U.S. 753, 770 (1972)).

[65] Dkt. No. 1, at 15–17.

[66] Dkt. No. 1, at 15–17.

[67] *See* Dkt. No. 1, at 2, 14, 21; *see also* 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA § 212(a) or § 221(g) or other applicable law.").

[68] Dkt. No. 1, at 6.

[69] *See* 8 U.S.C. §§ 1201(g), 1155; 22 C.F.R. § 40.6, 42.43; *see also* 9 Foreign Affs. Manual §§ 301.1-2, 504.2(B)(2) (2025); *see also Naseri*, No. 24-CV-2125 (GMH), 2025 WL 1865035, at *2 (citing *Datta*, No. 24-cv-937, 2025 WL 752643, at *1).

visa application.[70] But the I-130 petition and the DS-260 visa application are distinct adjudications made by different agencies: USCIS first adjudicates the I-130 petition; and then, if the I-130 petition is approved, the consular officer adjudicates the DS-260 visa application.[71] When the consular officer issues a § 221(g) refusal at the interview, it functions as a refusal that satisfies the officer's obligation to adjudicate the visa application while the underlying I-130 petition undergoes re-evaluation.[72] The fact that this re-evaluation may ultimately lead to a revocation of the underlying I-130 petition or reconsideration of the same DS-260 application does not make the consular officer's § 221(g) decision any less legitimate.[73]

Plaintiffs are also wrong to contend that the "worksheet for administrative processing under [§] 221(g)" failed to provide adequate notice of the consular officer's determination.[74] To the contrary, the consular officer satisfied the minimal notice requirement by issuing Plaintiff Alwahsh a worksheet stating that his application was refused for additional administrative processing under INA § 221(g), 8 U.S.C. § 1201(g).[75] Because that notice supplied a facially legitimate statutory basis for refusal, the Court lacks authority to review that final visa determination under the APA.[76]

### ii. *Application of Unlawful Criteria*

Having determined that the consular officer's § 221(g) refusal was a discretionary adjudication ordinarily shielded from judicial review, the Court next considers whether Plaintiffs plausibly allege a constitutional claim that falls within an exception to consular nonreviewability.[77]

Plaintiffs assert Fifth Amendment equal protection claims, arguing that Defendants applied improper standards and questioned the legitimacy of Plaintiffs' marriage on age- and gender-related grounds that are not otherwise applied to comparable petitions involving smaller age gaps or older male spouses.[78] Plaintiffs also assert that Defendants applied an outdated and discriminatory policy that subjected Plaintiff Alwahsh to a heightened admissibility criteria

---

[70] *See* Dkt. No. 1, at 6.

[71] See 8 C.F.R. § 204.1(a)(1) (2025); 8 U.S.C. § 1202(b) (2024); 9 Foreign Affs. Manual § 504.11-2(A) (2025).

[72] See 22 C.F.R. § 42.81(a) (2025); 9 Foreign Affs. Manual § 504.11-2(A)–(C) (2025).

[73] *See, e.*g., *Mazher v. Rubio*, No. 4:25-CV-017-P, 2025 WL 2471789 (N.D. Tex. Aug. 11, 2025), *report and recommendation adopted*, No. 4:25-CV-00017-P, 2025 WL 2468205 (N.D. Tex. Aug. 27, 2025) (collecting cases holding that a § 221(g) refusal constitutes adjudication of a visa application); *see also* 9 Foreign Affs. Manual § 302.1-8(B)–(C) (2025).

[74] *See* Dkt. No. 1, at 6.

[75] *Muñoz*, 602 U.S. at 908–09 (citing *Kerry v. Din*, 576 U.S. at 104–05 (Kennedy, J., concurring in the judgment); *Mandel*, 408 U.S. at 769–70).

[76] Dkt. No. 13, at 11 (citing *Muñoz*, 602 U.S. at 907).

[77] Dkt. No. 1, at 15–17.

[78] Dkt. No. 1, at 17–21.

because he is Yemeni, violating the INA's prohibition on discrimination on the basis of ethnicity.[79] Finally, Plaintiff Berkes separately invokes RFRA, arguing that the consular officer's comments and decision rested on improper religious assumptions that Plaintiff Berkes's marriage to a Muslim man is religiously prohibited by Berkes's faith, unlawfully burdening her religious exercise.[80]

Defendants argue that Plaintiffs fail to state either an equal protection or RFRA claim. As to equal protection, Defendants contend that Plaintiffs do not explain how the visa denial violated Plaintiff Berkes's constitutional rights or make the affirmative showing of bad faith needed to overcome a visa refusal supported by a facially legitimate statutory ground.[81] As to RFRA, Defendants argue that RFRA does not authorize judicial review of consular visa denials and, even if it did, Plaintiffs fail to allege facts plausibly showing a substantial burden on religious exercise.[82] Upon review, the Court agrees.

The Court notes, as a preliminary matter, that because the exception to consular nonreviewability applies only when a U.S. citizen's constitutional rights are burdened, Plaintiff Alwahsh cannot state a constitutional claim upon which relief may be granted. Turning to consider Plaintiff Berkes's claims, the Court finds that they, too, are deficient.

As *Muñoz* makes clear, a U.S.-citizen spouse must identify an independently recognized constitutional right of her own before any narrow constitutional review of a consular refusal is even arguable.[83] If the asserted right is equal protection, that guarantee arises through the Fifth Amendment's Due Process Clause, which contains an equal-protection component applicable to the federal government.[84]

Thus, where a consular officer's fraud determination is alleged to rest on stereotypes about the U.S.-citizen petitioner's own age or sex, the U.S. citizen may be able to assert a cognizable direct equal-protection injury to herself. Even then, however, judicial review remains sharply constrained unless the complaint plausibly alleges unconstitutional discrimination rather than a by a facially legitimate and bona fide fraud-based ground.[85] Some Circuits, though not the Fifth

---

[79] Dkt. No. 1, at 17 (citing 8 U.S.C. § 1152(a)(1) ("[N]o person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence.")).

[80] Dkt. No. 1, at 21–24.

[81] Dkt. No. 10, at 10–13.

[82] Dkt. No. 10, at 8–10.

[83] *See Muñoz*, 602 U.S. at 907–09, 919.

[84] *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

[85] *See Muñoz*, 602 U.S. at 907–09, 919; *Kerry v. Din*, 576 U.S. at 104–05 (Kennedy, J., concurring in the judgment); *Mandel*, 408 U.S. at 769–70; *Bolling*, 347 U.S. at 499.

Circuit, have found that a court may scrutinize the legitimacy of a consular officer's visa decision if a plaintiff "affirmatively allege[s] facts 'with sufficient particularity' to raise a 'plausibl[e] 'inference that the consular officer acted in 'bad faith'" despite the facial legitimacy of the officer's provided reason.[86] The closest Plaintiff Berkes comes to offering factual support for her disparate treatment discrimination claim are the comments Plaintiffs allege the consular officer made about Plaintiffs' ages and religions during the January 21, 2025 interview. As with any alleged "departure" from ordinary procedures, such a deviation might, in some circumstances, contribute to an inference of discrimination.[87] But even if the Court accepts that the consular officer's alleged remarks during the January 21, 2025 interview reflected some part of her reasoning, Plaintiff Berkes fails to allege that those considerations reflected bad-faith animus rather than ordinary concerns about fraud or the bona fides of the claimed relationship.[88] Because a consular officer adjudicating a visa application must assess whether the claimed relationship is genuine and free from indicia of fraud, Plaintiff Berkes has not overcome the deference owed to a refusal resting on a facially legitimate and bona fide statutory ground. Accordingly, the Court finds that she fails to state a viable equal-protection claim.

Plaintiff Berkes's RFRA count is similarly nonviable. RFRA provides a statutory, not constitutional, protection,[89] and the Court is not persuaded that it creates a freestanding path around an otherwise controlling doctrine of consular nonreviewability.[90] Even if a viable RFRA claim could be alleged in this context, the statute protects a plaintiff who can show: (1) a sincere exercise of religion; and (2) that government action imposes a substantial burden on that exercise.[91] Plaintiff Berkes does neither. While it is not the Court's role to assess the theological soundness of an asserted belief,[92] Plaintiff Berkes does not specify how the denial of her spouse's visa burdens her own ability to worship or engage in a concrete religious practice,[93] noting only that Defendants'

---

[86] *See Calvary Albuquerque Inc. v. Rubio*, 136 F.4th 1217, 1222, 1228 (10th Cir.), *vacated on reh'g en banc*, 154 F.4th 1246 (10th Cir. 2025); *Khachatryan v. Blinken*, 4 F.4th 841, 852–53 (9th Cir. 2021) (internal citations omitted); *Sesay v. United States*, 984 F.3d 312, 316-17 (4th Cir. 2021).

[87] *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977).

[88] *See* Dkt. 1, at 23–24.

[89] *See* 42 U.S.C. §§ 2000bb–2000bb-4; *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693–95 (2014); *Muñoz*, 602 U.S. at 907–09.

[90] *See Calvary*, 136 F.4th at 1230–37.

[91] 42 U.S.C. § 2000bb(a)–(b); *see also Wisconsin v. Yode*r, 406 U.S. 205, 92 (1972).

[92] See *Burwell*, 573 U.S. at 725 (quoting *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 715 (1981)).

[93] *See Burwell*, 573 U.S. at 726; *United States v. Salerno*, 481 U.S. 739, 759 (1987) (plurality opinion); *see Allen v. Wright*, 468 U.S. 737, 757 (1984).

actions "sabotaged Plaintiff Berkes's livelihood" and "threatened her ability to reside with her family."[94] Similarly, Plaintiff Berkes's contention that the officer should have "bas[ed] [her] decision on the evidence in the record showing a bona fide relationship"[95] is best read as a disagreement with how the officer weighed the evidence than an allegation that the government rejected a less-restrictive means of pursuing fraud-prevention. A U.S. citizen may assert that the denial of a spouse's visa burdens the citizen's own constitutional rights, including the right to marry, but as the Supreme Court has made clear, a citizen has no fundamental right to cohabitate with her non-citizen spouse.[96] Absent concrete facts tying the outcome to overtly religious criteria, Plaintiff Berkes's claim reads as a collateral attack on the consular officer's decision rather than an allegation of the kind of targeted, coercive burden on religious exercise that RFRA is designed to remedy.[97] Accordingly, the Court finds that Plaintiff Berkes has failed to plead a viable claim under RFRA.

### iii.    Unreasonable delay

As to Plaintiffs' claim of unreasonable delay, this Circuit has recognized that the APA permits review of undue delay in processing a visa application, though, as Defendants correctly note, it has never been discussed in the context of an application undergoing reprocessing.[98] The Court does not rule out the possibility that an applicant whose visa application has been refused under § 221(g) might later claim that their application has been unreasonably delayed. However, the Court declines to find that a d elay is unreasonable when, as here, it is attributable to the reprocessing that naturally follows a § 221(g) refusal.[99] Nothing in Plaintiffs' complaint suggests that the processing period following the return of Plaintiff Alwahsh's application to USCIS has been unreasonable. To the contrary, as two years that elapsed between when Plaintiff Alwahsh filed his initial DS-260 application on August 20, 2023, and when his consular interview occurred,[100] the record suggests that Plaintiffs' current waiting period has yet to exceed ordinary consular processing times for DS-260 applications.

---

[94] Dkt. No. 1, at 23.

[95] Dkt. No. 1, at 23.

[96] *Muñoz*, 602 U.S. at 909.

[97] *See* 42 U.S.C. § 2000bb-1(a); *Burwell*, 573 U.S. at 720–26.

[98] Dkt. No. 15, at 5 (citing *Jaraba v. Blinken*, 568 F.Supp.3d at 726, 730–31; *Ali v. Rice*, No. CV H-07-1868, 2008 WL 11502058, at *3 (S.D. Tex. July 31, 2008); *Patel v. Reno*, 134 F.3d 929, 932–33 (9th Cir. 1997); *P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11–12 (D.D.C. 2017)).

[99] See *Jolghazi*, No. 5:23-CV-01071-OLG, 2024 WL 4182593, at *3.

[100] Dkt. No. 1, at 5.

Not every claim that concerns visa adjudication is necessarily barred by consular nonreviewability; forward-looking claims that seek to ensure that agency protocols and regulations comply with statutory and constitutional requirements may proceed in appropriate circumstances.[101] Although the complaint briefly asserts that this action challenges both "the denial of Plaintiffs' immigrant visas *and* Defendants' procedural policies, practices, and interpretations of law,"[102] Plaintiffs do not develop any forward-looking cause of action to challenge what criteria a consular officer may consider when refusing a visa under § 221(g) elsewhere in their pleading. Accordingly, the Court finds that Plaintiffs have failed to plead a viable claim under the APA, INA, RFRA, or United States Constitution.

### CONCLUSION AND HOLDING

For the foregoing reasons, Plaintiffs claims are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

DONE this 9th day of April, 2026, in San Antonio, Texas.

_____
MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE

---

[101] *See, e.g.*, *Pieterson v. United States Dep't of State*, 138 F.4th 552, 555 (D.C. Cir. 2025).
[102] Dkt. No. 1, at 3 (emphasis added).